## Case No. 1,066.

### BARSTOW v. WILMOT.

[18 Betts, D. C. MS. 77.]

District Court, S. D. New York. March 22, 1851.

SHIPPING—LOSS OF GOODS—PERILS OF THE SEA—ROUGH PASSAGE—BILL OF LADING.

[1. A bill of lading of certain millstones provided that they should be delivered to the consignee in the like good order and condition as at the time of shipment, "all and every the dangers and accidents of the sea and navigation of whatsoever nature being excepted." It was shown that they were properly stowed, and that the ship had an extraordinarily rough passage, being thrown more than once on her beam ends, so that her cargo shifted. One of the stones was found to be broken when she reached port. *Held*, that the loss was within the exception of the bill of lading, and the ship was not liable therefor.]

[2. A provision in the margin of such bill of lading to the effect that "any extra expense of discharging at New York (the port of destination) to be paid by the consignee" makes him liable for such extra expenses as are necessarily incurred.]

[In admiralty. Libel by Thomas H. Barstow against Samuel D. Wilmot for freight. Decree for libellant.]

BETTS, District Judge. This action is brought by the master of the ship Mortimer Livingston to recover $171.80 for the freight of grindstones from Liverpool to New York, including $8 extra charge for unloading them. The respondent tendered before suit brought, and paid into court, $73.92, claiming he was entitled to damages equivalent to the residue of the demand because of the breaking and destruction of one of the millstones. The contestation between the parties has been as to who shall bear the loss, and no question has been raised as to the valuation put upon the stone not delivered. The bill of lading signed at Liverpool admits the shipment on shipboard of thirty grindstones, to be delivered in the like good order and condition at the port of New York (all and every the dangers and accidents of the seas and navigation of whatsoever nature being excepted) to the respondent. At the foot of the bill of lading was a note, in writing, "Weight unknown. Seven of the above chipped when shipped;" and in the margin, "Any extra expense of discharging in New York to be paid by the consignee." All the stones were delivered and accepted, except one, and that was broken on the passage, and for the purpose of this discussion is to be regarded as worthless.

The first mate testified to the stowage of the stones at Liverpool. Two persons, whom he supposed to be the shippers, requested them removed, after being first stowed and placed on their flats. They were removed accordingly to the place indicated, and so stowed. There was a thick body of coal under them, and boards were necessary to make them lie even, and fine coal spread over them and round them. Pieces of board were put between their edges, and a sufficient thickness of coal above to prevent injury from the cargo. No stones were placed so as to touch each other, and no one on top of another. He has had a good deal of experience in stowing and importing grindstones, and testified that the stowage in this case was good.

The ship had an extraordinarily rough passage, running under close-reefed top-sails nearly the whole time, and was several times blown on her beam ends, and shifted her cargo so much as to give her about two feet list. Two experienced shipmasters, one a port warden, and one a marine surveyor, testified that the stowage described by the mate was good and proper. The stevedore, who discharged the cargo, testified he had 15 years' experience in his business, had frequently unladen cargoes of grindstones, and that he found these stowed as described by the mate, and that the stowage was good. No part of the cargo placed above them came in contact with the stones. Mr. Noyes, an importer of grindstones, examined for the respondent, testified that he considered it safe stowage to lay stones on their flats if coal is under and over them. He should not suppose they would start by the rolling of the vessel, and did not think any extra expense was required for discharging this ship. Mr. Randolph, also examined by the respondent, says he is an importer of grindstones, and he generally finds them stowed standing on their edges, but sometimes laid on their flats, embedded in coal. He cannot account for the breaking of the stone in this case unless by the weight placed on it. A Mr. Chandler was examined to prove an admission by the libellant that he would satisfy the respondent for the damage done the stones. His testimony, however, shows no such admission, or any acknowledgment that he was answerable for the loss. I find, then, upon this testimony, that the grindstones were sufficiently and properly stowed, and that the damage was produced by causes within

the exception of the bill of lading. The contract exonerates the master from liability for losses occurring otherwise than from his own negligence or want of due skill in performing his duties. He is not an insurer for the safe delivery of the cargo, nor for anything more than, so far as depends on himself and those connected with the ship, that it shall be safely stowed, in a proper place, and not subjected to injury by the omission of due care and attention on his part. 3 Kent, Comm. 324; The Reeside, [Case No. 11,657;] Abb. Adm. 347, [Baxter v. Leland, Case No. 1,124.] Under this special undertaking, the master is only answerable for misconduct, or the want of ordinary diligence. New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344.

The defence set up cannot, therefore, avail the respondent, and the libellant is entitled to recover the balance of his demand, with interest and costs. The testimony of the stevedore shows that extra expense was necessarily incurred by the libellant, to the amount of $8, in discharging the stones, and that, by the reservation in the margin of the bill of lading, is to be borne by the respondent.

A decree must be entered for the libellant for $97.88, with interest from the time the suit was commenced, and costs.